In February, 1863, Capt. Johnson was raising a cavalry company for the Confederate service, arid Capt. Hall an infantry company, in the county of Anson, Boyden volunteered in Johnson’s company, and on the 1st of March, procured one McLendon to enter Hall’s company as his substitute. On the 4th of March, Polk, Colonel of militia, certifies as follows : “ This is to certify that John A. Boyden, a member of Cedar Hill militia company, has -employed a substitute to serve for him, and in his place, during the present war with the United States, and he is hereby exempt from militia duty for the space of three years.” And Johnson certifies as follows :
 

 “Wadesboro’, May 25 th, 1863.
 

 “ This certifies that John A. Boyden, who volunteered in the Anson troops, has, by furnishing a substitute in a foot company, and a horse to supply a member of my company, discharged his duty as a volunteer of North Carolina and the Confederate States.”
 

 “ L. A. JOHNSON, Capt. Anson Troops.”
 

 These certificates, together with the receipt of McLendon for $50, for taking Boyden’s place as a substitute for the war, proved by Grimsly, the attesting witness, are attached to each other, with this endorsement. “ Case of exemption.” ■ John A. Boyden “ furnished substitute,” “ approved, exempted.” “ J. M. Little, E. 0. &c.” “ I certify that these are the original papers filed in the office by Lieut. Little, Peter Mallett,. Colonel Commanding Conscripts, North Carolina. October 6, 1863.” On the 26th February, 1863, Lieut. Little gave Boyden a certificate as follows : “ John Boyden is hereby exempt from military duty, by reason of having furnished a substitute, 51 years of age. When he ceases to be employed, as such, this exemption is declared void.” Endorsed “ C. E. O., May 21st, 1863.” “ C. E. O., July 6th, 1863,” meaning that it was approved at those several dates. In August, 1863, Col. Mallett'read a letter from Lieut. Col. Polk, calling attention to a fraud practised upon an old man in his regiment and the government, by one John Boyden, of Anson county. This letter is referred to Lieut. Little, 81st August, 1863, “who will
 
 *176
 
 have this party sent to camp. W. L. Cole, Capt. Commanding.” It was returned with the following 'endorsement; “ Enrolling Office, Pitteboro’, September 3rd, 1803, respectfully returned to Commandant of Conscripts.” “This case has already undergone an examination, and the papers found correct. By reference to the papers of the 81st Begiment North Carolina militia, you will find his substitute papers correct. J. M. Little, Lieutenant and Enrolling Officer, 7th N. 0. Conscript District.” Upon the receipt of a letter from Major Boggan, reiterating the charges of fraud by Boyden on McLendon and the government, and the affidavit of Captain Hall, stating that McLendon had enlisted in his company on or about the 26th of February, 1862, as a volunteer, and was considered a volunteer, and not a substitute, in his company, that lie did not believe Boyden bad engaged McLeiidon until after he had been sworn in, as a substitute, Boyden was arrested as a conscript, and sued out a writ of
 
 habeas corpus,
 
 which was returned before me, October 3rd, 1863, and after ranch of the evidence was heard, adjourned until 18th Octo-her, and was decided after argument by Gen. Fowle for peti-sioner, and written argument by Gov. Bragg for the government. Three grounds were taken to exclude
 
 Boydea from
 
 exemption : 1st, invalidity of the substitution by reason of fraud on McLendon ; 2nd, fraud on the government; 3rd, want of power in Polk and Johnson to discharge Boyden.
 

 1st. The fraud alleged to have been practised by Boyden on McLendon, is in this: that Boyden, under pretense of' making him a present of $50, as a reward for his patriotism in going as a volunteer, had induced him to sign the receipt set out above, he being an ignorant man and not apprised of its contents. How far this allegation, if proven, would affect the validity of the substitution as between Boyden and the government, it is not necessary to consider, because, after a full examination, the allegation, so far from being proved, was clearly disproved. The witness, Clarke, swore that hearing Boyden wished to procure a substitute, and being told by McLendon that he would go as a substitute in a foot company for $50, (he objected to a cavalry company, not being a good rider,) he communicated the fact to Boyden at "Wades-
 
 *177
 
 boro’, on the 1st of March, 1862, when Hall was raising his company; that a few days afterwards, McLendon told witness he had gone into Hall’s company as Boyden’s substitute, and asked him if it was true that the 'county would not provide for his wife and children as he was a substitute
 
 1
 
 Clark told him that it was so. McLendon replied, before entering as a substitute some people had told him so, but others said the county would provide for the wives and children of all soldiers, no matter how they went to the war, and he believed so when he became Boyden’s substitute, but did not intimate that Boyden had ever said any thing to him on the subject ; a few days afterwards, McLendon applied to Boyden to let him off, which Boyden declined. The other evidence confirms this state of facts, and shows that McLendon did become Boyden’s substitute, and made no clamor about it until he found out he was mistaken as to the nature of the provision made by the county, in respect to which, he had been put on his guard before becoming a substitute, and even then, he mads no complaint that Boyden had led him into error, his allegation being that he never had agreed to become a substitute, but had entered as a volunteer and received the $50 of Boyden as a present.
 

 2nd. The fraud alleged to have been practiced by Boyden on the government is in this: that he procured McLendon to become his substitute
 
 after
 
 he had volunteered and was sworn in Captain Hall’s company. Capt. Hall swore that after the men, who were going to join his company, had been drawn up before the hotel door to be sworn, Boyden approached McLendon and wanted to speak to him, which he prohibited, saying, he must wait until the men were all sworn in — -they were then sworn in, and soon afterwards McLendon stepped pff with Boyden — -he had no recollection that McLendon was sworn in as Boyden’s substitute — it was done about 3 o’clock in the evening; he took down the names on a piece of paper with a pencil as they were sworn in ; does not recollect that the entry, as toMcLendon, differed from the others; being-notified to produce the original paper, he stated that he had searched for it, it was lost, being a rough draft, it was not usual to keep such papers. Boyden makes affidavit that the
 
 *178
 
 entry was, “ John A. Boyden by Lewis McLendon;” when Hall made it, he asked if that would do ? to which Boyden replied,
 
 “
 
 I suppose so.” Witness, Smith, swore that he saw Boyden, on the 1st of March, at "Wadesboro’, about 12 o’clock, take McLendon off and have a talk to themselves, and it was generally understood that McLendon had agreed to become Boyden’s substitute and joined Hall’s company as such.— Grimsly, the witness to the receipt, swore that while the men were drawn up before the hotel door, he is not certain whether it was just before, or just after they were sworn in, Boy-den and McLendon stepped into his room; Boyden said he was going to give McLendon $50 for his patriotism. Boyden drew the receipt, McLendon signed it, and Boyden paid him the money and he witnessed it. He supposed the parties understood each other, as the receipt was read over, and that McLendon either had, or was just about to swear in as Boy-den’s substitute. There was much evidence tending to show that McLendon had agreed to become Boyden’s substitute before he was sworn in, and that he was sworn in as his substitute,¿and that the money was paid and the receipt signed, a few moments afterwards; which circumstance, I am satisfied, gave color to, and was suggestive of, the rumor
 
 that he did
 
 not become Boyden’s substitute until after he was sworn in as a volunteer, when, of course, it would have been too late. Capt. Hall was mistaken as to the date of the transaction, it was on the 1st of March, and not on the 25th of February.
 

 3rd. As Boyden had not been drafted by Colonel Polk, the case does come withiu the decision in
 
 the
 
 matter of Bitter, so the discharge by Polk is of no effect.. The case turns on the validity of the discharge by Captain Johnson. Had Boyden put in McLendon as his substitute in Johnson’s company, the case would have come under the decision of the Supreme Court in the matter of Kennady, a recruiting officer. Now, suppose Boyden had, on the 1st of March, himself, joined Captain Hall’s company with the assent of Capt. Johnson, previously given, as presumed from his subsequent discharge on the receipt of the horse, under the maxim, “
 
 Omnis rati-habitio retrotrahitur et mandato equiparatur,”
 
 would the transfer have been valid ? I am convinced that it would, by giv
 
 *179
 
 ing to the regulations in respect to transfers, the same liberal construction that the regulation in respect to .substitutes (October, 1863,) received in the matter of Sitter and Kennady. The regulation is in these words, Article 15th, 142, “ The Colonels may, upon the application of the Captains, transfer a soldier from one company to another of his regiment. Article 143, when soldiers are authorized to be transferred, the transfer will take place on the 1st of a month, with the view to the more correct settlement of their accounts. 144. In all cases of transfer, a complete descriptive list will accompany a soldier transferred, which roll will contain an account of his pay, clothing and other allowances, also all stoppage to be made on account of the government and debts due the laundress, as well as such other facts as may be necessary to show his character and military history.” It is clear, that while companies are in the act of being formed, a compliance with these details, which are made material when the parly is in service, in order to prevent confusion, as back pay, indebtedness, description, 1st day of month, character and military, history, &c., is not necessary, and should be dispensed with by a liberal construction, for when the companies are in the act of being formed, no considerations of that nature are presented, and the purpose is fully answered if the two Captains ■consent that the man may withdraw from one company and. join tire other; certainly there can be no necessity for an application to the Colonel of the regiment, and the matter must rest in the discretion of the Captains who are endeavoring to raise the companies, because the companies are in an inchoate state and there is no regiment or Colonel. It seems to me the analogy is perfect, and that the transfer in the case supposed, must be held to be valid, or the principle established by the decisions in the cases of Ritter and Kennady, must be overruled or disregarded. The fact, that the one was to be cavalry and the other an infantry company, cannot prevent the application of the principle, because neither company was organized or attached to a regiment. In our case, Boyden did not himself join Hall’s company, but put in a substitute, which fact, raises the ease only to the extent of requiring a direct application of the same principle fact in regard to the
 
 *180
 
 transfer and then to the substitution, and although it makes the case more complicated, the conclusion must be precisely the same, as the result in compound, is as true as in simple multiplication. Iam fortunate in having my conclusions as to the construction of the army regulations confirmed, by the fact, that Mr. Boyden’s substitute papers have been time and again passed on by Lt. Little, E. 0., and adjudged by him to be valid, and also, have received the sanction of Colonel Mallett, commandant of conscripts, who filed them in his office without exception, and I think it clear, the matter never would have been stirred but for the suggestions of fraud, which, upon full examination, turn out be untrue, although in respect to both charges, upon the clamor of McLendon, there may have been sufficient color to make an investigation proper.
 

 It is, therefore, considered by me, that John A. Boyden be forthwith discharged, with leave to go wheresoever he will; the costs to be taxed by the clerk of the Superior Court of Anson county, will be paid by F. Darley. The clerk will file the papers in his office and give copies.
 

 B. M. PEARSON, C. J. S. C.
 

 October 17th, 1863 — At Richmond Hill.